1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   GILBERT GARDNER,                              No. C 11-06226 YGR (PR)

10                  Petitioner,                   **ORDER DENYING PETITION FOR WRIT OF
                                                  HABEAS CORPUS; DENYING CERTIFICATE
11        v.                                      OF APPEALABILITY**

12
    R. GROUNDS, Warden,
13
                    Respondent.
14
    _____/
15

16                                  **INTRODUCTION**

17          This matter is now before the Court for consideration of Gilbert Gardner's ("Petitioner") *pro*

18  *se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 concerning his 2010 conviction in San

19  Francisco County Superior Court.  For the reasons set forth below, the Petition is DENIED as to all

20  claims.  In addition, a certificate of appealability is also denied.

21                                   **BACKGROUND**

22  **I.      Case History**

23          On May 17, 2012, a San Francisco County jury convicted Petitioner of (1) second degree

24  burglary and (2) two misdemeanor counts of resisting arrest.  (Clerk's Transcript ("CT") at 150-152.)

25  On June 8, 2010, Petitioner was sentenced to a term of seven years imprisonment on the first count,

26  and two concurrent one-year terms on the two misdemeanor counts.  (*Id.*)  Petitioner appealed the

27  judgment to the California Court of Appeal.  (Ans., Ex. B.)

28          On April 14, 2011, the California Court of Appeal, in an unpublished written opinion,

    affirmed the judgment of conviction.  (Ans., Ex. E.)  On June 29, 2011, the California Supreme

**United States District Court**
For the Northern District of California

1  Court denied Petitioner's petition for review.  (Ans., Ex. G.)

2        On December 13, 2011, Petitioner filed the instant petition for writ of habeas corpus.

3  (Docket no. 1.)  On January 4, 2012, the Court issued an Order to Show Cause.  (Docket no. 3.)

4  Respondent filed an Answer to the Petition, and Petitioner has not filed a Traverse.

5  **II.    <u>Facts</u>**

6        In its unpublished opinion addressing Petitioner's claims on direct appeal, the state appellate

7  court set forth the following summary of the facts:

8        Joel Benson testified that on January 17, 2010, about 1:20 p.m., he and his wife were
   inside the lower flat of their residence on 22d Street in San Francisco when they
9     heard a sound in the upper flat.  The upper flat had been undergoing renovation, but
   no work was scheduled to occur that day.  It was obvious that construction was
10    going on upstairs because of scaffolding outside and a large sign displaying the
   permit.  Benson attempted to open the door to the upper flat, but the door would not
11    open.  He retrieved a flashlight and peered through the mail slot and saw denim.
   Benson told his wife to call 911.  As she did so, defendant exited through the front
12    door and walked and then ran away. Defendant stated that he was just looking for a
   place to stay.  Benson recognized defendant as the same person he had chased out of
13    the flat approximately two weeks earlier.

14    San Francisco Police Officer Jacob Fegan testified that he was on duty on January
   17, 2010, with his partner, Officer Chris Rallis.  Fegan received a radio dispatch
15    about an alleged crime in the vicinity and was provided with the direction the
   perpetrator was headed.  Fegan attempted to intercept the man, but failed.  After the
16    officers exited their vehicle, Fegan observed a man matching the description given in
   the dispatch.  The man looked at Fegan and started running.  Fegan identified
17    himself as a police officer and ordered the man to stop, but he continued to run
   away.  Fegan pursued, and the man stopped when he saw a police car heading
18    toward him from the other direction.  Fegan identified defendant as the fleeing man.

19

20    Fegan testified that defendant resisted "for a minute or for seconds" by moving his
   arms when Fegan attempted to handcuff him.  Fegan testified that he "needed
21    assistance from other officers" to handcuff defendant.  Fegan stated that, subsequent
   to the arrest, Rallis conducted the search of defendant, and "I believe that he found
22    [a knife] in his jacket pocket."

23        William Scherer testified about a July 22, 2006 burglary with similar
   underlying facts.  Scherer resided on 26th Street in San Francisco and his house was
24    visibly undergoing construction.  He testified that he saw defendant coming down
   the walk from his house carrying Scherer's gym bag.  When Scherer asked defendant
25    what he was doing, defendant said he was just looking around.  Scherer grabbed his
   gym bag, and defendant ran away.  Scherer found jewelry, rings, watches, and other
26    property in the gym bag, and later discovered cash and an Omega watch were
   missing from his house.  Scherer identified defendant in court.

27  *People v. Gardner*, 2011 WL 1431513, *1-3 (Cal. Ct. App.).

28

**United States District Court**
For the Northern District of California

1

**STANDARD OF REVIEW**

2    This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

3  custody pursuant to the judgment of a State court only on the ground that he is in custody in

4  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v.*

5  *Hodges*, 423 U.S. 19, 21 (1975).  A district court may not grant a petition challenging a state

6  conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless

7  the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

8  involved an unreasonable application of, clearly established Federal law, as determined by the

9  Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

10  determination of the facts in light of the evidence presented in the State court proceeding."  28

11  U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law

12  and fact, *Williams v. Taylor*, 529 U.S. 362, 384–86 (2000), and the second prong applies to decisions

13  based on factual determinations.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

14    A state court decision is "contrary to" clearly established Supreme Court precedent if it

15  "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it

16  "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

17  and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at 405–06.

18  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state

19  court identifies the correct governing legal principle from [the Supreme] Court's decisions but

20  unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  Section

21  2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "A

22  federal court may not overrule a state court for simply holding a view different from its own, when

23  the precedent from [the Supreme Court] is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12,

24  17 (2003).

25    Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will

26  not be overturned on factual grounds unless objectively unreasonable in light of the evidence

27  presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340.  Where constitutional error is

28  found, habeas relief is warranted only if the error at issue had a "substantial and injurious effect on

1   the verdict." *Penry v. Johnson*, 532 U.S. 782, 796 (2001).

2       In determining whether the state court's decision is contrary to or involved an unreasonable

3   application of clearly established federal law, or is based on an unreasonable determination of the

4   facts, a federal court looks to the decision of the highest state court to address the merits of a

5   petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir.

6   2000). Here, the California Court of Appeal was the highest court to address, in a reasoned opinion,

7   Petitioner's claims. Thus, it is that opinion which the Court reviews when ruling on those claims.

8                               **DISCUSSION**

9   **I.    Legal Claims**

10       Petitioner raises the following claims for habeas corpus relief: (1) the denial of his Sixth

11   Amendment right to self-representation; and (2) the insufficiency of the evidence used to convict

12   him of resisting arrest.

13       **A.    Self-Representation**

14       Petitioner contends that the trial court violated his Sixth Amendment right to self-

15   representation, as that right is established in *Faretta v. California,* 422 U.S. 806 (1975). Petition at

16   6. A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*, 422 U.S. at

17   832. However, a request for self-representation must be unequivocal. *Meeks v. Craven*, 482 F.2d

18   465, 466-68 (9th Cir. 1973). The requirement of unequivocality serves two purposes: it ensures that

19   the defendant does not inadvertently waive his right to counsel, *Meeks,* 482 F.2d at 467, and it

20   prevents the defendant from taking advantage of the mutual exclusivity of the rights to counsel and

21   self-representation, *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989).

22       If a defendant equivocates, he is presumed to have requested the assistance of counsel. *Id.;

23   see also United States v. Bennett*, 539 F.2d 45, 49-51 (10th Cir.) (defendant who vacillated between

24   representation by counsel and self-representation until six days before trial forfeited right to self-

25   representation). Furthermore, a defendant's expression of a clear preference for receiving new

26   counsel over representing himself may be an indication that the request is equivocal. *See Stenson v.

27   Lambert*, 504 F.3d 873, 883 (9th Cir. 2007) (state court's determination that defendant had not made

28   an unequivocal request was not an unreasonable determination of the facts where defendant made

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

several statements that he did not want to represent himself but felt the court and existing counsel were forcing him to do so, defendant had tried to locate another attorney, had not included a request to represent himself in his final written request for new counsel, and requested a particular individual be retained as his counsel).  Under California law, when a defendant requests substitution of court-appointed counsel, the trial court has a duty to listen to his or her specific reasons for the request.  *People v. Marsden*, 2 Cal. 3d 118, 123-25 (1970).  This in short-hand is known as a "*Marsden* motion" or a request for a "*Marsden* hearing."  *See Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000).

A defendant's request to represent himself must also be made in timely fashion; "a timeliness element in a *Faretta* request is clearly established federal law as determined by the Supreme Court."  *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).  "[B]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely," however, "other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely."  *Id.*  In *Marshall*, the petitioner had made his *Faretta* request on the morning.  of trial and the Ninth Circuit found no constitutional error in the state court's denial of the request.  *Id.* In so holding, the Ninth Circuit further observed that the petitioner had "presented no facts to show that his last-minute request was reasonable," and that "he could have made his request much earlier than the day of trial."  *Id.*

Though the Ninth Circuit has established a bright-line rule for the timeliness of *Faretta* requests -- a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay -- it has not applied this rule as "clearly established" Supreme Court law for purposes of 28 U.S.C. § 2254(d).  *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997); *Marshall*, 395 F.3d at 1062 (state court's determination that petitioner's *Faretta* request made on the day of trial, but before jury selection, was untimely, was not "contrary to" clearly established federal law under 28 U.S.C.  § 2254(d)).

The facts underlying Petitioner's *Faretta* claim were summarized by the state appellate court as follows:

A. Defendant's *Marsden* Motions

On February 24, 2010, prior to the preliminary hearing, defendant, who was represented by David Wilton, made a *Marsden* motion to obtain new counsel. Defendant expressed dissatisfaction with the direction Wilton was taking the defense. The *Marsden* motion was denied, with the court (Judge Little) stating "[y]ou already had Sue Kaplan, who is an excellent attorney. And now you have Mr. Wilton. You don't get to pick your attorney."

Wilton voluntarily handed off the case to Lisa DewBerry, who was appointed by the court as defendant's counsel just before his March 10, 2010 arraignment. On April 8, defendant made another *Marsden* motion to replace DewBerry. He also moved, in the alternative, to represent himself. Defendant testified "I feel that she maybe made some kind of deal, or something, on the side, and I was the person that took the fall for whatever deal that she made. You know, I think that her deal was made for me to go to prison for someone else to get a better deal, or something. And that is—a lot of times that's how it goes, and I understand that." Defendant continued "I just don't feel comfortable. You know, I feel like I've been lied to. I feel like I'm being tricked. And I feel like, you know, that everybody in this courtroom is against me personally. I don't feel comfortable even having a hearing here. I would like to really go back to Department 22 and try to reassess my, my other options there—if possible."

After hearing defendant's objections to counsel, the court (Judge Breall) noted that "Miss DewBerry got a low bail given that you are looking at 25 years to life." Defendant continued reiterating "I just don't feel comfortable having hearings in this courtroom" and "I can't get an attorney that will do what I ask them to do for my best interests. And they always do something on the side that—I mean their personal thing."

The court clarified defendant's objections by inquiring, "And by you saying you need a three strikes serious lawyer, I take it you understand what you're facing and that you really need the help of a very good lawyer, is that correct?" Defendant responded, "Yes." The court reiterated, "You need to be represented by a lawyer in other words?" Defendant again answered "Yes." The court continued "All right. Because you did mention two days ago that you would have to represent yourself if you had to. And I understand you were upset at the time. . . . But I just want to make sure that you no longer want to represent yourself, that you understand this is serious, and you need a lawyer. Is that correct? Is that correct?" Defendant replied, "Well, yes. I mean that was from the beginning. I need a lawyer. . ." When asked a final time, "And you want a lawyer, correct?" Defendant affirmed, "Yeah, but I mean a trial lawyer."

Judge Breall then ruled, "I'm going to deny your *Marsden* motion as well as the *Faretta* given that you really want an attorney and you want a three strikes attorney to represent you."

B. Defendant's Second *Faretta* Motion

After the denial of the April 8, 2010 *Marsden* and *Faretta* motions, defendant made another *Faretta* motion that was heard on May 3 by Judge Little. The judge began the hearing by inquiring about defendant's educational background and experience with the criminal justice system. After several minutes the court inquired, "[s]o what is it you really want, do you want to represent yourself or do you want a different attorney?" Ultimately, defendant responded, "My whole problem is getting an attorney that's going to assist me properly." The court then concluded defendant did

**United States District Court**

For the Northern District of California

not want to represent himself but wanted a different lawyer and relied on that as one of the reasons for denying the *Faretta* motion.

On May 6, 2010, defendant asked Judge Yaggy to reconsider Judge Little's denial of the May 3 *Faretta* motion. The prosecutor summarized the May 3 and subsequent proceedings as follows: After Judge Little's decision, the case was transferred back to Judge Haines. Defendant said he wanted to renew his motion because Judge Little was not a superior court judge. Judge Haines corrected defendant regarding Judge Little's status. When the prosecutor left the courtroom during the May 6 hearing, defendant renewed the criticisms he had previously expressed regarding DewBerry and accused Judge Little of being biased against him. Judge Yaggy declined to revisit the motion Judge Little had already denied.

*Gardner*, 2011 WL at *1-3.

The state appellate court rejected Petitioner's claim as follows:

Granting a *Faretta* motion requires balancing the right to be represented by counsel with the defendant's right to self-representation. (*Faretta*, *supra*, 422 U.S. at p. 835 ["When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. [Citations.]"].) To ensure the proper balance is struck, defendant's invocation of the right of self-representation must be "unequivocal." (*People v. Clark* (1992) 3 Cal.4th 41, 98.) All of a defendant's words and conduct is taken into consideration in determining whether defendant unequivocally invoked his right of self-representation. (*People v. Marshall* (1997) 15 Cal.4th 1, 23-26 (*Marshall*).)

Defendant's requests for self-representation were equivocal. Although a defendant need not himself have the skill and experience of a lawyer to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish "'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Faretta*, *supra*, 422 U.S. at p. 835.) Defendant requested to represent himself only in the context of being unhappy with his attorney, and when judges repeatedly inquired whether he wanted an attorney, defendant indicated he did.

Furthermore, an invocation of the right of self-representation is not considered unequivocal when motivated simply by dissatisfaction with a current attorney. A *Faretta* motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal. (*Marshall*, *supra*, 15 Cal.4th at 21.) Defendant's requests to proceed pro se solely because he could not acquire newly appointed counsel were not unequivocal invocations. (See *People v. Lopez* (1981) 116 Cal.App.3d 882, 889-890 [*Faretta* request "was at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney"].) In fact, whatever his motivation for moving to represent himself, defendant specifically stated he wanted a lawyer's assistance.

A *Faretta* motion must be made "within a reasonable time prior to the commencement of trial." (*People v. Windham* (1977) 19 Cal.3d 121, 128, fn. omitted (*Windham*).) When a *Faretta* motion is not made in a timely fashion, it may be denied at the trial court's discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900,

959.)  The court may consider "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, at p. 128.)

Defendant's May 3, 2010 *Faretta* motion was made about one week before jury selection and the resolution of motions in limine.  Defendant's May 6 request for reconsideration was made two days after the case had been assigned to a trial department.  Therefore, the court had discretion to deny the requests even if they were unequivocal.

On May 3, 2010, defendant stated he was "ready to pick a jury today."  Thus, arguably, the beginning of trial would not have been delayed if the court had permitted defendant to represent himself.  All the other *Windham* factors, however,weighed against granting the motion.  The trial court praised the abilities and depth of knowledge of defendant's current counsel.  Defendant had made two prior *Marsden* motions and had been represented by three attorneys in the case.  Defendant made the *Faretta* motion due to dissatisfaction with the performance of his current counsel.  (See *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206, quoting *People v. Wilkins* (1990) 225 Cal.App.3d 299, 309, fn. 4 [The defendant's "main problem with counsel was a disagreement over trial tactics, which is 'an insufficient reason to grant an untimely *Faretta* request.'"].)  Defendant made his final *Faretta* motion late in the proceedings after denials of previous *Marsden* and *Faretta* motions.  Accordingly, defendant has not shown that denial of his *Faretta* motion was an abuse of discretion.

*Gardner*, 2011 WL at *5-*7.

Petitioner asserts that his *Faretta* request was unequivocal and that "it was not [Petitioner] who vacillated from asking for substitute counsel to waiving his right to counsel, it was the judges who kept derailing [Petitioner's] motions by insisting he was really making a *Marsden* motion and that motion was never going to be granted."  Petition at 7.  Moreover, he states that Respondent incorrectly argues that Petitioner's motion for self-representation was made on the eve of his trial and was therefore untimely.  (*Id.*)  Petitioner argues that "[t]he Court was aware as early as April 5, and April 8 that appellant wanted to represent himself."  (*Id.*)

Applying the above-cited legal principles to the instant matter, the Court finds that Petitioner's claim that his Sixth Amendment right to self-representation was violated is unavailing for two reasons.  First, the state appellate court correctly found that Petitioner's April 8, 2010 *Faretta* motion was equivocal.  The record indicates that on April 8, 2010, Defendant made a *Marsden* motion to replace his lawyer Lisa DewBerry and, in the alternative, moved to represent

United States District Court

For the Northern District of California

himself.  However, toward the end of proceedings, Defendant stated that he needed a lawyer.

Pursuant to *Meeks*, a request for self-representation must be unequivocal.  482 F.2d at 466-68.

Here, Petitioner's request for self-representation was equivocal because, although he first stated

that he wanted to represent himself, he later stated that he needed a lawyer.  As discussed above, a

defendant's expression of a clear preference for receiving new counsel over representing himself

may be an indication that the request is equivocal.  *Stenson*, 504 F.3d at 883.  Under these

circumstances, it cannot be said that the state appellate court's finding that Petitioner's April 8,

2010 request for self-representation was equivocal was contrary to or an unreasonable application

of clearly established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  28 U.S.C. § 2254(d).  On May 3, 2010 and May 6, 2010, Defendant made an

additional *Faretta* motion and a motion for reconsideration.  Although these later motions may

have been unequivocal, as discussed below, they were untimely.

        The state appellate court correctly found that Petitioner's second *Faretta* motion was

untimely.  As the above-cited standard indicates, the timeliness of a *Faretta* motion is not date

specific; the trial court must consider a number of factors.  A *Faretta* motion made on the day of

trial is almost certainly untimely, while one made several weeks before trial may be timely.

Petitioner's May 3, 2010 motion was made on the date set for trial and his May 6, 2010 motion for

reconsideration was made two days after the case was assigned to a trial department.  These dates

do not meet the "several weeks" standard that *Faretta* itself established.  Further, in light of the

timing of this and prior requests, this Court cannot say that the state court's decision was contrary

to or an unreasonable application of clearly established federal law or was based on an

unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).  For these

reasons, Petitioner is not entitled to state habeas relief on his Sixth Amendment claim.

**B.**     **Sufficiency of the Evidence**

        Petitioner claims there was insufficient evidence to support his conviction for resisting

arrest by Officer Rallis.

        The state appellate court found there was substantial evidence to support Petitioner's

9

conviction for this offense as follows:

> Fegan testified that while in the presence of Rallis, he ordered defendant to stop running.  Defendant did not comply, and a chase ensued.  As a police car approached defendant, he stopped.  Fegan attempted to handcuff him, but defendant resisted by moving his arms for "a minute or for seconds."  Fegan testified that he needed assistance from other officers to handcuff defendant, although he did not specifically mention Rallis by name.  However, Fegan did testify that Rallis conducted a search incident to the arrest of defendant that revealed a knife in defendant's jacket pocket.

> Substantial evidence supports the conviction on count 3.  Defendant fled from both officers after Fegan's command to stop.  Further it is reasonable to infer that Rallis also pursued defendant after he fled.  (*People v. Raley* (1992) 2 Cal.4th 870, 889 [the reviewing court must draw "all reasonable inferences in favor" of the verdict].)

*Gardner*, 2011 WL at *5.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  Nor does a federal habeas court in general question a jury's credibility determinations, which deserve near-total deference.  *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).  Indeed, if a record supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.*  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *Jackson*, 443 U.S. at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality."  *Coleman v. Johnson*, _U.S._, 132 S. Ct. 2060, 2065 (2012).

According to Petitioner, the fact that Officer Fegan testified that he needed help from other officers to arrest Petitioner indicates that Officer Rallis was not the only other officer present.  Petition at 9.  However, a rational trier of fact could have found from Officer Fegan's testimony that both Officer Fegan and Officer Rallis pursued Petitioner and that, because they both pursued Petitioner, Officer Rallis assisted in Petitioner's arrest.  Although Officer Fegan did not name Officer Rallis as the assisting officer by name, the evidence showed that Officer Rallis conducted

**United States District Court**
For the Northern District of California

the search incident to arrest that revealed that Petitioner was armed.  On this basis, the jury found that Officer Rallis assisted in Petitioner's arrest.  Such a conclusion does not fall below the threshold of bare rationality. Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence, and Petitioner is not entitled to habeas relief on this claim.

### **CONCLUSION**

For the foregoing reasons, the Court DENIES the Petition for Writ of Habeas Corpus as to all claims.  A certificate of appealability will not issue.  Reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  January 9, 2013

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

United States District Court
For the Northern District of California